## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JULIE BERG, ) | |
| ) | |
| Plaintiff, ) | **CIVIL ACTION** |
| ) | |
| v. ) | **No. 11-1157-JWL** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying supplemental security income (SSI) under sections 1602 and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I.     Background

Plaintiff applied for SSI on March, 2008, alleging disability beginning September 1, 1997. (R. 101-03). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 17, 51-54,

67-69).  Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing

before ALJ Linda L. Sybrant on December 18, 2009.  (R. 17, 29-50).  At the hearing

testimony was taken from Plaintiff and from a vocational expert.  (R. 17, 32-50).

On February 12, 2010, ALJ Sybrant issued her decision, finding at step three of the

Commissioner's sequential evaluation process that Plaintiff's mental impairments meet

the Listing criteria for affective disorder, anxiety related disorder, and substance addiction

disorder (Listings 12.04, 12.06, 12.09).  (R. 17-24).  Because she found medical evidence

of a substance use disorder, the ALJ considered whether the limitations remaining if

Plaintiff stopped using alcohol would be disabling.  She determined that if Plaintiff

stopped using alcohol, her remaining impairments would be severe but that they would

not meet or medically equal the severity of a Listed impairment.  Id. at 21-22.  The ALJ

next assessed Plaintiff's residual functional capacity (RFC) if she stopped using alcohol,

and determined she would be able to perform medium work physically limited to

occasional overhead reaching and lifting on the right, and mentally limited to intermediate

work.  Id. at 22-23.  She determined that if Plaintiff stopped alcohol use, she would be

able to perform her past relevant work as a certified nurse's assistant or as a medical

records technician as that work is generally performed.  Id. at 23.  Because she found

Plaintiff would be able to perform past relevant work (and would not be disabled) if she

stopped using alcohol, the ALJ found that Plaintiff's substance use disorder is a

contributing factor material to the determination of disability, and denied Plaintiff's

application for SSI.  Id. at 23-24.

2

Plaintiff alleged error in the ALJ's decision and sought Appeals Council review. (R. 11-13).  By notice dated March 23, 2011, the Appeals Council granted Plaintiff's request for review, and notified Plaintiff that it planned "to make a decision finding that you are not disabled through the date of the Administrative Law Judge's decision."  (R. 96).  Among other potential responses, the Council informed Plaintiff that she could "send us more evidence or a statement about the facts and the law in your case within 30 days of the date of this letter."  (R. 98).  Plaintiff provided an untimely response to the Appeals Council on April 27, 2011 which was nonetheless included in the administrative record.  (R. 9-10).  As stated in its notice granting review, the Appeals Council issued the "Decision of the Appeals Council" on May 3, 2011.  (R.4-7).

The Appeals Council adopted the ALJ's findings at steps one through three of the sequential evaluation process, but found that if Plaintiff stopped using drugs and alcohol she would have the RFC for medium work physically limited to occasional overhead reaching and lifting on the right, and mentally limited to simple, routine, unskilled work. (R. 4-5).  The Council rejected the ALJ's step four finding and determined that Plaintiff is unable to perform her past relevant work, but found at step five of the evaluation process that there were a significant number of jobs in the national economy that Plaintiff could perform.  (R. 5-6).  The Council determined that Plaintiff was not disabled within the meaning of the Act, and denied her application.  (R. 7).  The Council's decision is the final decision of the Commissioner, and Plaintiff seeks judicial review.  (R. 1); (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)).  Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party.  It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

4

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months.  Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. § 416.920 (2011); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses

claimant's RFC.  20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--determining whether claimant can perform past relevant work; and whether, considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy within Plaintiff's capability.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ failed to cite to record evidence that establishes that Plaintiff could work at the medium exertion level or that she could perform substantial gainful activity if she stopped using drugs and alcohol.  (Pl. Br. 11-14).  She also claims the ALJ erred in weighing the treating source medical opinions of Dr. Golon and Mr. Copeland.  Id. at 15-18.  Finally, Plaintiff claims the Appeals Council's decision repeats the errors the ALJ made.  Id. at 18-19.  The Commissioner argues that the ALJ properly considered the medical opinions of Mr. Copeland and Dr. Golon, properly considered Plaintiff's substance abuse, and properly found that Plaintiff can perform work at the medium exertion level.  (Comm'r Br. 5-11).  He also argues that the Appeals Council

correctly reviewed the ALJ's decision.  Id. at 11.  The court will address each error

alleged by Plaintiff in the order it would be reached in applying the sequential evaluation

process.  As a preliminary matter, the court will explain the extent of the decision over

which it exercises jurisdiction in this case.  In its review, the court finds no error and

affirms the Appeals Council's decision.

## III.    The Final Decision of the Commissioner of Social Security

In 2000, the Supreme Court explained how a question regarding the "final decision

of the Commissioner" is determined in accordance with the Act and the regulations

promulgated thereunder.

> The Social Security Act provides that "[a]ny individual, after any final
> decision of the Commissioner of Social Security made after a hearing to
> which he was a party, ... may obtain a review of such decision by a civil
> action" in federal district court.  42 U.S.C. § 405(g).  But the Act does not
> define "final decision," instead leaving it to the SSA to give meaning to that
> term through regulations.  See § 405(a); Weinberger v. Salfi, 422 U.S. 749,
> 766, 95 S. Ct. 2457, 45 L. Ed. 2d 522 (1975).  SSA regulations provide that,
> if the Appeals Council grants review of a claim, then the decision that the
> Council issues is the Commissioner's final decision.  But if, as [was the
> case in Sims], the Council denies the request for review, the ALJ's opinion
> becomes the final decision.  See 20 CFR §§ 404.900(a)(4)-(5), 404.955,
> 404.981, 422.210(a) (1999).

Sims v. Apfel, 530 U.S. 103, 106-107 (2000).

Applying the regulations as explained in Sims to this case, the court finds that the

"Decision of the Appeals Council" is the "final decision of the Commissioner."  (R. 4-7).

Here, the Appeals Council granted Plaintiff's request for review, and issued its own

decision.  (R. 1-7, 96-100).  Therefore, the ALJ's decision has been rejected, at least in

part, and the "Decision of the Appeals Council" is the final decision of the Commissioner. The court will review the Appeals Council's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the Commissioner applied the correct legal standard.  Lax, 489 F.3d at 1084.

In reviewing the "final decision of the Commissioner," the court will review, and will primarily look in, the "Decision of the Appeals Council."  However, to the extent the Council has adopted, agreed with, or otherwise relied upon ALJ Sybrant's decision, the court will include those evaluations and explanations in its review.  Because the court is tasked to review the "final decision of the Commissioner"--the decision of the Appeals Council--Plaintiff's argument that the Appeals Council failed to remedy the errors of the ALJ is necessarily subsumed within the court's review of the final decision and will not be considered separately in this opinion.

## IV.    Evaluating the Treating Source Opinion

Plaintiff claims the Commissioner erred in weighing the opinion of Plaintiff's mental health treatment team consisting of a nurse practitioner, Mr. Copeland, and a psychiatrist, Dr. Golon.  (Pl. Br. 15-18).  She argues that the ALJ should have accorded "controlling weight" to the opinion, and failing that, should have evaluated the opinion deferentially in accordance with the regulatory factors for evaluating medical opinions. (Pl. Br. 16-17).  Plaintiff argues that the ALJ did not provide sufficient explanation how she weighed the treating source opinion, that the explanation she provided is inconsistent with the evidence, and that she "picked and chose" from the record using only evidence

favorable to her opinion while ignoring portions favorable to Plaintiff.  (Pl. Br. 16-17) (citing Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004); Washington v. Shalala, 37 F.3d 1427, 1441 (10th Cir. 1994)).  She also argues that the ALJ failed to discuss any of the regulatory factors, and that she should have sought clarification of the opinion before rejecting it.  Id. at 17-18 (citing Robinson, 366 F.3d at 1084; McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002); White, 287 F.3d at 908).

The Commissioner acknowledges that Dr. Golon and Mr. Copeland signed a Medical Source Statement on November 17, 2009 and an Alcoholism and Drug Addiction Evaluation on November 23, 2009 which together contain the opinions at issue here. (Comm'r Br. 5-6) (citing (R. 471-72, 474)).  The Commissioner argues that the opinions were properly denied controlling weight.  Id. at 7.  He implies that the opinion is not a "treating source" opinion because Mr. Copeland is not an "acceptable medical source," and because "the record does not reflect whether Dr. Golon ever examined or treated Plaintiff."  Id.  Nevertheless, he argues that an ALJ is not required as a matter of course to expressly apply each of the six regulatory factors for weighing medical opinions and that, as required by law, "[t]he ALJ provided good, legitimate reasons for providing little weight to [nurse practitioner] Copeland and Dr. Golon's opinions."  Id. at 7-8 (citing Oldham v. Astrue, 509 F.3d 1254, 1257-58 (10th Cir. 2007)).

## A.    Standard for Evaluating Treating Source Opinions

A physician who has treated a patient frequently over an extended period of time is expected to have greater insight into the patient's medical condition, and his opinion is

generally entitled to "particular weight."  <u>Doyal v. Barnhart</u>, 331 F.3d 758, 762 (10th Cir. 2003).  "If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight."  20 C.F.R. § 416.927(d)(2); <u>see also</u>, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2011) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion.  <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p).  The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'"  <u>Id.</u> at 1300 (quoting SSR 96-2p).  If the opinion is well-supported, the ALJ must determine if the opinion is also consistent with other substantial evidence in the record.  <u>Id.</u>  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  <u>Id.</u>

If the treating source opinion is not given controlling weight, the inquiry does not end.  <u>Id.</u>  A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  <u>Id.</u>  Those factors are:  (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is

10

supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R. § 416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion.  Id. 350 F.3d at 1301.  "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so."  Id.  (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

### B.    Analysis

In its decision, the Appeals Council stated it adopted the ALJ's statements regarding the issues in the case, and the evidentiary facts as applicable.  (R. 4).  It also stated it "agrees with the Administrative Law Judge's findings under steps 1, 2, and 3 of the sequential evaluation."  Id.  Therefore, the evidentiary facts as found by the ALJ and the ALJ's findings under steps 1, 2, and 3 are a part of the "final decision of the Commissioner."  Consequently, because the ALJ summarized the evidentiary facts regarding treatment at The Guidance Center (where nurse-practitioner Copeland treats Plaintiff under the direction of Dr. Golon) (R. 20-21), and because the ALJ assessed the weight accorded the opinion of Mr. Copeland and Dr. Golon in his step three analysis (R.

11

21), the court finds that the ALJ's determination in this regard is the "final decision of the

Commissioner," and it must evaluate Plaintiff's allegation of error in the ALJ's analysis.

The ALJ summarized Plaintiff's treatment at The Guidance Center:

The claimant started mental health treatment at The Guidance Center in March 2008. (11F/31 [(R. 432)]). Records reflect that she had been released from Osawatomie State Hospital three weeks earlier. She reported drinking and being in jail in the past due to substance use. The claimant advised that she drank daily, including the date of the assessment, smoked crack cocaine a month earlier, and smoked marijuana two months earlier. (11F/33 [(R. 434)]). Based on the evaluation, the claimant was assessed with posttraumatic stress disorder and major depressive disorder, recurrent, severe, without psychotic features, and was given a GAF[1] score of 50. (11F/34 [(R. 435)]). During her initial psychiatric assessment on April 7, 2008 (11F/26 [(R. 427)]), claimant reported that she had been off medication since 2001. She was noted to have a history of noncompliance with treatment. (11F/27 [(R. 428)]). The psychiatrist assessed major depression, recurrent, severe, and assigned a GAF score of 48. (11F/27 [(R. 428)]). A progress note dated June 9, 2008, reflects that the claimant was "still drinking" and she was given a GAF score of 55. (11F/24 [(R. 425)]). Drinking is documented on October 24, 2008. (11F/20 [(R. 421)]). On January 5, 2009, the claimant reported that she had stopped drinking, her mood was assessed as stable, and she was given a GAF score of 65. (11F/17 [(R. 418)]). In February 2009, she had started drinking again, and her GAF score was 55. (11F/16 [(R. 417)]). Later, on February 27, 2009, claimant reported using alcohol occasionally, she was considering inpatient treatment, and her GAF score was 48. (11F/15 [(R. 416)]). She was a no-show on April 10, 2009. (11F/14 [(R. 415)]). The next date of treatment

---

[1]A Global Assessment of Functioning, or GAF, score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 32 (4th ed. text revision 2000). The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). Id. at 34. GAF is a classification system providing objective evidence of a degree of mental impairment. Birnell v. Apfel, 45 F. Supp. 2d 826, 835-36 (D. Kan. 1999) (citing Schmidt v. Callahan, 995 F. Supp. 869, 886, n.13 (N.D. Ill. 1998)).

was June 8, 2009, when claimant reported that she had quit drinking in April, her mood was within normal limits, and she was given a GAF score of 60.  (11F/13[(R. 414)]).  On July 20, 2009, claimant's mood was mildly disturbed, she was asking for Xanax and cross addiction was discussed with her, and she was given a GAF score of 50.  (17F/2 [(R. 465)]).  She drank again in September 2009.  (20F [(R. 475-83)]).  The claimant testified that she had had two relapses between April 2009 and the hearing date.

(R. 20-21).

The ALJ also explained the weight she gave the opinions of nurse practitioner

Copeland and Dr. Golon:

The claimant's treating nurse practitioner and psychiatrist provided a medical source statement in November 2009 finding numerous limitations at a moderate level of dysfunction.  (18F [(R. 471-72)]).  They also provided a form noting that in addition to alcohol dependence, the claimant has diagnoses of major depressive disorder and post traumatic stress disorder.  (19F [(R. 474)]).  They stated that the claimant had not been able to maintain sobriety for more than a few weeks and that it would be difficult to determine limitations sober.  This statement is confusing since in the medical source statement they checked that they excluded all limitations resulting from drug or alcohol addiction.  Also confusing is the definition of "moderate" provided in the checklist medical source statement.  At any rate, there is no evaluation that supports the limitations assessed and their own records show significant improvement when the claimant is sober.  Her sobriety has also been more than a few weeks, with no drinking between April 2009 and September 2009 and another relapse in November 2009 according to the claimant's testimony.  The opinions expressed by claimant's treating source are given little weight under the circumstances.

(R. 21) (emphasis added).  To the extent the Commissioner argues that the opinions at

issue are not treating source opinions, that argument is precluded by the ALJ's specific

finding emphasized above, and by the fact that the Appeals Council adopted the ALJ's

findings.  To be sure, a nurse practitioner is not an "acceptable medical source" as the

Commissioner points out, and as such his opinion is not a "medical opinion" at all, and

cannot be a "treating source" opinion.  Nonetheless, Dr. Golon is an "acceptable medical source" who signed the opinions at issue, the ALJ found the opinions are those of "claimant's treating source," and the evidence supports that Mr. Copeland and Dr. Golon, in collaborative practice, constituted Plaintiff's mental health treatment team.

Plaintiff's argument that the ALJ needed to provide an explanation how she assigned weight to the medical opinions is without merit because, as quoted above, the ALJ in this case explained how she weighed the opinions of Plaintiff's treatment team. Plaintiff's argument also misunderstands the ALJ's finding that "there is no evaluation that supports the limitations assessed and their own records show significant improvement when the claimant is sober."  (R. 21).

Plaintiff notes that a psychological opinion may rest on either observed signs and symptoms or on psychological testing, notes that Mr. Copeland evaluated Plaintiff at each visit, and argues that the ALJ must have overlooked these evaluations in finding that there is no evaluation that supports the limitations assessed.  As Plaintiff suggests, Mr. Copeland evaluated Plaintiff at each visit.  The ALJ did not overlook these evaluations, but, as quoted above, provided an extensive summary of the treatment notes.  (R. 20-21). Further, Plaintiff points to no evaluation by Mr. Copeland or Dr. Golon which demonstrates limitations as severe as the eleven out of twenty mental abilities designated as "moderately limited" in the treating sources's Medical Source Statement.  Moreover, and perhaps most importantly in the circumstances, Plaintiff points to no evaluation by any other medical source which suggests limitations approaching the severity of those

14

suggested by Plaintiff's treatment team.  Additionally, the structure of the decision

suggests that the ALJ was primarily looking at the lack of evaluations by <u>other medical</u>

<u>sources</u> which support the limitations assessed, because she contrasts "no evaluation that

supports the limitations assessed" with "their [(Plaintiff's treatment team's)] own records

[which] show significant improvement when the claimant is sober."  (R. 21).

  With regard to the second part of this finding, Plaintiff argues that the ALJ "picked

and chose" from the record those parts of the treatment notes favorable to her decision

while ignoring those parts which are favorable to Plaintiff's claims.  Specifically, she

argues, "The ALJ does not appear to take into consideration that Berg's condition

demonstrated deterioration on numerous occasions during periods of sobriety."  (Pl. Br.

17) (citing (R. 416, 418, 423, 424, 427, 428)).  Plaintiff misstates the evidence cited.  The

ALJ noted that on January 5, 2009, when Plaintiff first reported that she had stopped

drinking, her mood was assessed as stable and she was assessed a GAF score of 65.[2]  (R.

20) (citing Ex. 11F/17 (R. 418)).  She noted that Plaintiff had started drinking again in

February 2009, but that Plaintiff reported in June 2009 that she had stopped drinking once

again in April 2009.  (R. 20).  She noted that Plaintiff drank again in September, 2009 (R.

20-21), and testified to another relapse in November, 2009.  (R. 21).  Record pages 423,

424, and 427-28 cited in Plaintiff's Brief relate respectively to treatment notes from

---

  [2]A GAF score in the range of 61-70 indicates "**Some mild symptoms** . . . **OR some difficulty in social, occupational, or school functioning** . . . **but generally functioning pretty well.**"  DSM-IV-TR 34 (emphasis in original).

August 4, 2008, July 7, 2008, and April 7, 2008, all <u>before</u> Plaintiff reportedly stopped

drinking.  As such, they do not relate to a period of sobriety as suggested by Plaintiff.

Record page 416 relates to a treatment note dated February 27, 2009, during the period

when Plaintiff began drinking again, and explicitly states "Alcohol:  Still Occasionally."

This record also does not relate to a period of sobriety, as Plaintiff argues.

Record page 418 relates to the treatment note dated January 5, 2009 when Plaintiff

first reported that she stopped drinking.  However, as noted above, and as the ALJ

specifically found, this treatment note stated "Alcohol:  Has Stopped," and "Assessment:

Mood Stability, Sobriety,"[3] and assessed a GAF of 65.  (R. 418).  This note relates to a

period of sobriety, but represents improvement, not deterioration, in Plaintiff's condition.

Plaintiff has shown no error in the ALJ's finding that the treatment team's own records

show significant improvement when Plaintiff is sober.

Plaintiff next argues that the ALJ erred because she did not discuss any of the

regulatory factors for weighing medical opinions.  However as the Commissioner argues,

an ALJ is not required to expressly apply each of the regulatory factors to each medical

opinion.  (Comm'r Br. 7-8) (citing <u>Oldham</u>, 509 F.3d at 1258).  All that is required is that

"the ALJ's decision be 'sufficiently specific to make clear to any subsequent reviewers

---

[3]Although this treatment note also states "Mood:  Mildly Disturbed" (R. 418), it is
not error on these facts for the ALJ to find that Plaintiff's "mood was assessed as stable"
(R. 20) where the treatment note states, "Assessment:  Mood Stability, Sobriety," where it
records that Plaintiff has stopped drinking, and where Plaintiff's GAF is assessed as 65--
suggesting that she has mild symptoms but is generally functioning pretty well.  (R. 418).

the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham, 509 F.3d at 1258 (quoting Watkins, 350 F.3d at 1300).  Here, the ALJ provided sufficient specificity.

In her final argument with regard to the treating source opinions, Plaintiff suggests that the ALJ should have sought clarification from the treatment team regarding their ability to assess Plaintiff's mental limitations if she stopped drinking, and regarding the definition of "moderate" in the Medical Source Statement.  She argues, based upon Robinson, 366 F.3d at 1084; McGoffin, 288 F.3d at 1252; and White, 287 F.3d at 908, that clarification is necessary "when an ALJ finds that a treating source does not provide sufficient evidence to support their conclusion."  (Pl. Br. 17-18).

Contrary to Plaintiff's argument, the ALJ did not find that the treatment team did not provide sufficient evidence to support their conclusions.  Rather, she found that they provided two reports in which they relied upon conflicting rationale, and that the definition of "moderate" in one of the reports was confusing.  She found sufficient information in the treatment team's records to resolve these conflicts and ambiguities, and did so.  She noted that in the Medical Source Statement, the treatment team stated that they had excluded all limitations resulting from drug addiction and/or alcoholism, and they opined that Plaintiff was "moderately limited" in eleven of twenty mental abilities.  (R. 21); see also (R. 471-72).  She noted that, despite the purported exclusion of limitations resulting from drugs or alcohol, the treatment team "stated that the claimant had not been able to maintain sobriety for more than a few weeks and that it would be

17

difficult to determine limitations sober." (R. 21); see also (R. 474). She then resolved this ambiguity by noting that Plaintiff had been sober from April 2009 through September 2009 despite the treatment team's statement that she was not able to maintain sobriety more than a <u>few weeks</u>, and by noting that the treatment team's own records showed significant improvement when Plaintiff was sober. As to the confusing definition of moderate, the ALJ apparently saw no need for clarification, noting that "[a]t any rate, there is no evaluation that supports the limitations assessed." (R. 21).

In these circumstances, there was simply no need for the ALJ to seek further clarification. Moreover, Plaintiff does not explain how seeking further input from the treatment team would produce "clarification." Here, the team provided a Medical Source Statement which contains a definition of "moderate" which the ALJ found confusing. Almost a week later they provided an Alcoholism and Drug Addiction Evaluation which made the earlier Medical Source Statement even more confusing. A third report received in response to a request for clarification presents the potential for additional confusion or ambiguity. The court sees no need to seek additional input from a medical source merely because the ALJ has discounted the opinion of that source. This is especially so where the ALJ has explained the rationale for her determination. The court finds no error in the ALJ's evaluation of the treatment team's medical opinion.

## V.    Drug Addiction and Alcoholism (DAA) Analysis

Plaintiff claims error in the Commissioner's DAA analysis because the ALJ found Plaintiff can perform work at the medium exertion level and because the ALJ failed to

point to evidence supporting a finding that Plaintiff could work if she stopped using drugs and alcohol.  She argues that the state agency consultants determined Plaintiff could not work above the light exertional level and that the ALJ merely relied upon her own speculation to find Plaintiff capable of medium work. She argues that although the ALJ relied upon the state agency consultants' evaluation, the consultants did not have the entire record before them and the ALJ did not explain how the consultants' assessment outweighed the treating source opinion.  Plaintiff concludes by arguing that the "record does not contain clear evidence of Berg's functioning absent any drug and alcohol abuse," and that because "it is not possible to separate the mental restrictions and limitations imposed by drug and alcohol abuse [from] the other mental disorders shown by the evidence," the ALJ should have determined that drug addiction and alcoholism is not a contributing factor material to the determination of disability.  (Pl. Br. 14) (citing Social Security Administration, Office of Disability, EMERGENCY TELETYPE -- Questions and Answers Concerning DAA, dated August 30, 1996); see also, Salazar v. Barnhart, 468 F.3d 615, 623 (10th Cir. 2006) (noting that question and answer 29 of the Emergency Teletype "stresses the need for careful examination of periods of abstinence and also directs that if the effects of a claimant's mental impairments cannot be separated from the effects of substance abuse, the DAA is not a contributing factor material to the disability determination").  The Commissioner argues that the ALJ and the Appeals Council applied the correct DAA analysis, and that the finding that Plaintiff can perform medium exertion is supported by the examination and report of Dr. Lewis.

**A.**     **Framework for Applying the DAA Analysis**

Section 105 of Public Law 104-121 amended the Social Security Act in 1996 to

add § 223(d)(2)(C) (codified at 42 U.S.C. § 423(d)(2)(C)) which provides that an

individual will not be considered disabled within the meaning of the Act "if alcoholism or

drug addiction would (but for this subparagraph) be a contributing factor material to the

Commissioner's determination that the individual is disabled."  The Commissioner

promulgated regulations which control in determining whether drug addiction or

alcoholism is a contributing factor material to the determination of disability.  60 Fed.

Reg. 8140, 8147, 8151 (Feb. 10, 1995) (codified at 20 C.F.R. §§ 404.1535, 416.935).

Those regulations provide:

> (a) General.  If we find that you are disabled and have medical evidence of
> your drug addiction or alcoholism, we must determine whether your drug
> addiction or alcoholism is a contributing factor material to the
> determination of disability.
>
> (b) Process we will follow when we have medical evidence of your drug
> addiction or alcoholism.  (1) The key factor we will examine in determining
> whether drug addiction or alcoholism is a contributing factor material to the
> determination of disability is whether we would still find you disabled if
> you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current
> physical and mental limitations, upon which we based our current disability
> determination, would remain if you stopped using drugs or alcohol and then
> determine whether any or all of your remaining limitations would be
> disabling.
>
> (i) If we determine that your remaining limitations would not be disabling,
> we will find that your drug addiction or alcoholism is a contributing factor
> material to the determination of disability.

(ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism, and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 416.935.

If a claimant is disabled and there is medical evidence of drug addiction or alcoholism, the Commissioner must determine whether the drug addiction or alcoholism is a contributing factor material to the determination of disability.  If it is, the claimant will be found not to be "disabled" as defined in the Act.   Drapeau v. Massanari, 255 F.3d 1211, 1215 (10th Cir. 2001).  The key factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability "is whether the Commissioner would still find the claimant disabled if he or she stopped using drugs or alcohol."  Id.; see also 20 C.F.R. § 416.935(b)(1) (key factor is "whether we would still find you disabled if you stopped using drugs or alcohol").

Pursuant to 20 C.F.R. § 416.935, a finding of disability is a condition precedent to the determination of whether drug addiction or alcoholism is a contributing factor material to the disability determination.  Drapeau, 255 F.3d at 1214 (construing the 1996 amendment of the Act along with the regulations).  Therefore, in a case where drug addiction or alcoholism is suggested by the evidence, the ALJ must first apply the five-step sequential evaluation process to determine whether a plaintiff's limitations, including consideration of drug addiction or alcoholism, are disabling.  If so, the ALJ must then assess plaintiff's RFC limitations which would remain if she stopped using drugs or

alcohol, and apply the sequential evaluation process a second time to determine whether the limitations assessed would be disabling.  Id., 255 F.3d at 1214-15.

### B.      The "Final Decision of the Commissioner" Regarding DAA

As discussed above, the "Decision of the Appeals Council" adopted the ALJ's findings at steps 1, 2, and 3 of the sequential evaluation process.  (R. 4).  The Council adopted the ALJ's determination that when using alcohol and drugs, Plaintiff meets Listings 12.04, 12.06, and 12.09 and is disabled.  Compare, (R. 4); with (R. 20-21).  The ALJ then applied the sequential evaluation process a second time and made specific findings at steps 2 and 3 if Plaintiff stopped drug and alcohol use.  (R. 21).  The Appeals Council also applied the sequential evaluation process a second time and adopted the ALJ's step two finding regarding severe impairments, and her step three finding that if Plaintiff stopped using drugs and alcohol, her condition would not meet or medically equal any Listed impairment.  (R. 4).  The Appeals Council, however, rejected the ALJ's RFC assessment and made its own RFC assessment even though the only difference in the two assessments was in Plaintiff's mental limitations.  Compare, (R. 5); with (R. 22).  The Appeals Council also adopted the ALJ's application of the psychiatric review technique if Plaintiff stopped using drugs and alcohol.  (R. 5).

The Appeals Council assessed Plaintiff, if she stopped using drugs and alcohol, with the RFC for medium work--limited by her right shoulder disorder to occasional overhead reaching and lifting on the right, and by her mental impairments to simple, routine, unskilled work.  (R. 5).  It rejected the ALJ's step four finding that Plaintiff

22

would be able to perform her past relevant work if she stopped using drugs and alcohol, and found that if Plaintiff stopped using drugs and alcohol she would be unable to perform her past relevant work.  Id.  At step five the Appeals Council found that if Plaintiff stopped using drugs and alcohol there are a significant number of jobs in the economy she can perform.  (R. 5-6).

### C.   Analysis

As the discussion above makes clear, the Appeals Council applied the DAA framework to its decision of this case.  Plaintiff's real complaint is not that the Appeals Council did not apply the DAA framework, but that the Appeals Council did not support its RFC assessment with substantial record evidence, and that the Council should have determined (as did Plaintiff's treatment team) that the limitations and restrictions imposed on Plaintiff by DAA cannot be separated from the limitations and restrictions imposed by Plaintiff's other mental impairments.

The court previously considered the Appeals Council's determination to discount the treatment team's medical opinion and found no error.  It will not repeat that analysis. In support of her argument that the Council did not support its RFC assessment with substantial record evidence, Plaintiff asserts that "during times of sobriety Berg maintained GAF scores between 41-50 which indicates serious impairment of functioning."  (Pl. Br. 12) (emphasis added) (citing (R. 416, 418, 423, 424, 427-28)).  In the records cited, Plaintiff was assessed with a GAF score of 48 on April 7 and July 7, 2008, and on February 27, 2009.  (R. 416, 424, 427-28).  She was assessed with a GAF

score of 44 on August 8, 2008.  (R. 423).  While these scores indicate serious impairment in functioning[4] as Plaintiff argues, the court already found each of these dates was during a period when Plaintiff was drinking and do not relate to "times of sobriety" as alleged by Plaintiff.  Supra at 15-16.  Plaintiff also cites to page 418 of the record which is a treatment note from January 5, 2009, when Plaintiff reported she had stopped drinking.  While this note relates to a period of sobriety, Plaintiff was assessed with a GAF score of 65 at that time.  (R. 418).  As discussed above, a GAF score of 65 suggests Plaintiff had mild symptoms but was generally functioning pretty well.  Supra at 15 n.2, 16 n.3.

Plaintiff argues that "[i]nstead of adequately considering this evidence [from Plaintiff's treatment team], the ALJ made a conclusory statement that Berg's condition 'significantly improved when [she was] sober.'" (Pl. Br. 12) (purportedly quoting (R. 21)).  The court is unsure how to address this argument.  It fails on several levels.  First, the court has considered the ALJ's evaluation of Plaintiff's treatment team's opinions and has found no error.  Second, the court cannot find the quoted language in either the ALJ's decision or the Appeals Council's decision.

Third, the record evidence supports the ALJ's findings and conclusion.  The ALJ stated, "As summarized [from The Guidance Center treatment notes], the claimant's level of function increased dramatically when she was not drinking."  (R. 21).  While this is a

---

[4]GAF scores in the range of 41-50 indicate "**Serious symptoms . . . OR any serious impairment in social, occupational, or school functioning**."  DSM-IV-TR at 34 (emphasis in original).

conclusion made by the ALJ, it is by no means "conclusory." She based the conclusion upon her summary of the treatment notes, and the court has already noted (twice) that the notes support her finding. In the very next paragraph, the ALJ stated that "a psychologist with Disability Determination Service noted the improvement in claimant's mental condition with sobriety since April 2009." (R. 21) (citing Ex. 12F (R. 438-52)). Once again, this finding is supported by the record. (R. 450). In his report, Dr. Blum, the state agency psychological consultant, noted evidence showing Plaintiff's improved mental condition with sobriety, and concluded, "Now that the claimant has been clean and sober she is capable of performing at least simple work in a competitive setting." (R. 450).

Plaintiff argues that it was improper to rely upon Dr. Blum's report because Dr. Blum failed to discuss Mr. Copeland's observations or the GAF scores assigned in The Guidance Center treatment notes and "did not have the entire record to review since his assessment was completed in July 2009 while there were still months of records and assessments to consider that came afterward." (Pl. Br. 14). Although Dr. Blum did not specifically mention the GAF scores assigned by the treatment team, he did consider and discuss treatment notes from The Guidance Center:

> Chart notes from The Guidance Center in February 2009 indicate the claimant has continued to drink and inpatient treatment presumably for alcohol dependence was being considered. She did not show up in April 2009. However as of 06/08/09 she indicated she had been sober for seven weeks. Her MSE [(Mental Status Examination)] was basically WNL [(within normal limits)] with the exception of mild disturbance in sleep. Affect was appropriate and well modulated. There were no cognitive reductions. She reported things were going well at home. She was

exercising, walking her dog.  She indicated that she wanted to get on a volleyball team.

(R. 450).  Dr. Blum clearly considered treatment notes from Plaintiff's treatment team, and he focused on the improvement shown in those notes when Plaintiff stopped drinking. Although Dr. Blum did not specifically mention the GAF scores assigned, he clearly considered them, and the ALJ discussed them. (R. 20-21).  Moreover, as the court has noted twice above, the GAF scores assessed by the treatment team support the ALJ's finding of improvement in Plaintiff's mental condition when she stopped drinking.

While it is true that Dr. Blum did not have all of the records before him, the ALJ and the Appeals Council did, and they considered the entire record.  Moreover, much of the record received after Dr. Blum's consideration dealt with physical issues.  (R. 461, 475-83).  The portion of the later record most relevant to Plaintiff's psychological condition was the reports of Plaintiff's treatment team (R. 464-74), and the ALJ and Appeals Council adequately and properly considered and discounted those reports.

Plaintiff claims that the evidence does not support that Plaintiff is capable of work at the medium exertion level because the state agency consultants found she was limited to light work, and because the examining sources did not specifically state that Plaintiff could perform medium level work.  (Pl. Br. 13) (citing (R. 157-64, 353-57, 373, 457-60 461)).  She argues that, therefore, the ALJ's or Appeals Council's determinations must have been their own interpretation of the evidence based merely on improper speculative inferences.

26

Plaintiff is correct that a state agency Single Decision Maker (SDM)[5] prepared a "Physical Residual Functional Capacity Assessment," finding that Plaintiff is able to perform light work (R. 157-64), and that assessment was affirmed by state agency medical consultants, Dr. Parsons (R. 373), and Dr. Siemsen.  (R. 461).  However, the ALJ rested her finding of ability to perform medium work on the consultant examination reports of Dr. Greiner and Dr. Lewis, not on the RFC assessments of the SDM or of the state agency medical consultants.  (R. 23) (citing Exs. 5F, 14F (R. 353-57, 457-60)).  She noted that:

> Physically, the record is consistent with the claimant's ability to perform a wide range of medium work throughout the time frame relevant to this appeal.  (5F; 14F [(R. 353-57, 457-60)]).  Physical evaluations were performed in April 2008 and July 2009 and the claimant was found to be essentially normal neurologically, with regard to muscle functioning, sensation and ability to perform orthopedic maneuvers.

(R. 23).

--------

[5]An SDM opinion is not a medical opinion and is worthy of no weight in an ALJ's analysis.  E.g., Ky v. Astrue, No. 08-cv-00362-REB, 2009 WL 68760 at *3 (D. Colo. Jan. 8, 2009) ("An SDM is not a medical professional of any stripe, and the opinion of an SDM therefore is entitled to no weight."); Stanley v. Astrue, No. 09-20485-CIV, 2009 WL 3060394 (S.D. Fla. Sept. 24, 2009) (remanding with directions not to rely upon determination by SDM); Smith v. Astrue, No. 3:07-cv-1165-J-TEM, 2009 WL 890391 at *11 (M.D. Fla. March 31, 2009) (ALJ improperly classified SDM as physician); Burnham v. Astrue, No. 06-124-P-H, 2007 WL 951386 at *2 (D. Me. March 27, 2007) (ALJ wrongly accorded weight to opinion of SDM).  Courts in this District have reached the same conclusion.  E.g., Thongleuth v. Astrue, No. 10-1101-JWL, 2011 WL 1303374, *11 (D. Kan. Apr. 4, 2011); Greenfield v. Astrue, No. 09-1173-WEB, 2010 WL 2132057, *4, n.5 (D. Kan. Apr. 26, 2010) (Report & Recommendation, adopted May 27, 2010, 2010 WL 2132061); Cowan v. Astrue, No. 09-1154-WEB, 2010 WL 2131915, *6 (D. Kan. Apr. 9, 2010) (Report & Recommendation, adopted May 27, 2010, 2010 WL 2132028); Kempel v. Astrue, No. 08-4130-JAR, 2010 WL 581900, *7 (D. Kan. Jan. 4, 2010); Houghtaling v. Astrue, No. 08-2656-KHV-GBC, slip op. at 2, 3, (D. Kan. Nov. 10, 2009)

Plaintiff does not allege error in relying on the reports of these examining physicians. Rather, she argues that the ALJ must have been speculating when she reached her conclusion since the examining consultant reports did not specifically state that Plaintiff could perform medium work, and the SDM and state agency consultants (who had also relied upon the examining consultant reports) had only found that Plaintiff could perform light work. (Pl. Br. 13) (citing McGoffin, 288 F.3d at 1252). The court does not agree.

The duty of the ALJ is to consider, to interpret, and to weigh all of the evidence, including the medical evidence, and to reach conclusions at each step of the sequential evaluation process based upon her consideration, interpretation, and weighing of the evidence. 20 C.F.R. §§ 416.920, 416.920a, 416.927, 416.929, 416.945-46, 416.1429, 416.1453. The fact that in doing her duty the ALJ may prefer certain medical opinions over other medical opinions, or may interpret medical evidence differently than another evaluator might have done, will not establish that an error has occurred. The fact that the SDM reached a conclusion based upon the consultative examination reports which was different than the conclusion reached by the ALJ based upon the same reports is of little moment. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see

also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). The fact that the SDM's conclusion was affirmed by the state agency medical consultants does not change the court's analysis unless the examining consultants' reports will not support the conclusion reached by the ALJ.

The case cited by Plaintiff does not require a different result. Plaintiff cites McGoffin for the proposition that an ALJ may not make speculative inferences from medical reports and may only reject a treating source opinion outright on the basis of medical evidence and "not due to his or her own credibility judgments, speculation or lay opinions." (Pl. Br. 13) (quoting McGoffin, 288 F.3d at 1252). In McGoffin, the ALJ rejected an assessment signed by a treating physician because the ALJ doubted that the assessment expressed the physician's "own, singular opinion." McGoffin, 288 F.3d at 1251. The McGoffin court cited the rule quoted above, and found that "the ALJ's unfounded doubt that [the physician] agreed with the assessment he signed, in the face of unrefuted evidence to the contrary, is error." That is not the case here. The ALJ here weighed the examination reports differently than did the SDM, but she did not express a credibility judgment or speculation about whether any physician actually stated or believed his or her own report. Rather, she weighed the medical opinions in accordance with the correct standard for doing so.

The proper question is whether substantial evidence supports the finding of the ALJ. In this situation, it boils down to whether the reports of Dr. Greiner and Dr. Lewis support the ALJ's determination that Plaintiff can perform medium work. Plaintiff does

not even attempt to argue that the consultative examination reports do not support the ALJ's finding.  She merely argues that the reports did not specifically state that Plaintiff could perform medium work.  (Pl. Br. 13).  The Commissioner, on the other hand, points to findings in Dr. Lewis's report tending to support the ALJ's finding that Plaintiff can perform medium work.  (Comm'r Br. 11) (citing (R. 457-60)).  The court notes that, as the ALJ suggested, many of the same, or similar findings are present in Dr. Greiner's report.  (R. 353-57).  Plaintiff has shown no error in this regard.

Plaintiff's claim that it is not possible to separate the mental restrictions and limitations imposed by drug and alcohol abuse from the mental restrictions and limitations imposed by Plaintiff's other mental impairments is without merit in light of the court's findings above.  As the court found, the ALJ properly discounted the treatment team's opinion that the limitations could not be separated.  Moreover, Dr. Blum assessed the limitations separately and provided a Psychiatric Review Technique form and a Mental RFC Assessment form to that effect.  As discussed above, the ALJ and Appeals Council properly relied upon Dr. Blum's opinion, and substantial record evidence supports the findings.

The court has considered Plaintiff's allegations of error in evaluating the treating physician's opinion and in the DAA analysis, and finds no error as alleged by Plaintiff.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 13th day of April 2012, at Kansas City, Kansas.

30

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**